Wanda BRETHORST, Plaintiff-Respondent,

v.

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,
Defendant-Appellant.

Supreme Court

*No. 2008AP2595. Oral argument September 7, 2010.
—Decided June 14, 2011.*

2011 WI 41

(Also reported in 798 N.W.2d 467.)

For the defendant-appellant there were briefs by *James M. Ryan, Jason P. Gehring,* and *Kasdorf, Lewis, & Sweitlik, S.C.,* Milwaukee, and oral argument by *James M. Ryan.*

For the plaintiff-respondent there was a brief and oral argument by *Timothy S. Knurr* and *Schoone, Leuck, Kelley, Pitts & Knurr, S.C.,* Racine.

An amicus curiae brief was filed by *James A. Friedman, Kendall W. Harrison* and *Godfrey & Kahn, S.C.* for Wisconsin Insurance Alliance.

¶ 1. DAVID T. PROSSER, J. This case comes to the court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (2007–08).[1] The case arises out of an uninsured motorist (UM) claim submitted by Wanda Brethorst (Brethorst) to her insurer, Allstate Property and Casualty Insurance Company (Allstate). When Brethorst made a demand for settlement, Allstate offered only a partial settlement of Brethorst's claim for $4,789 in medical expenses above the $5,000 in medical expenses covered by her policy. Brethorst rejected the offer, then filed suit against Allstate for bad faith.

¶ 2. Allstate filed a motion with the circuit court asking that Brethorst's contract claim for UM coverage of her personal injuries be bifurcated from her bad faith claim. Allstate also requested that discovery on the bad faith claim be stayed until the contract claim was resolved. Brethorst opposed the motion on grounds that she had filed only one claim—bad faith—and thus no bifurcation or stay of discovery was appropriate.

¶ 3. The circuit court agreed with Brethorst and denied both parts of Allstate's motion. The court concluded that a party may maintain a bad faith claim without first proving a breach of contract claim as a condition precedent.

¶ 4. Allstate appealed, and the court of appeals certified the matter to this court. We granted certification on the following issues:

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

27

(1) Whether a finding of wrongful denial of benefits is a condition precedent to proceeding with discovery in a first-party bad faith claim based on wrongful denial of benefits?

(2) In a first-party bad faith claim, if a finding of wrongful denial of benefits is a condition precedent to proceeding with bad faith discovery, does the trial court err if it refuses to grant the insurance company's motion to bifurcate the issues for discovery? Do the same policy considerations that make it error for the trial court to refuse a motion to bifurcate simultaneous bad faith and breach of contract *claims*—avoiding undue prejudice to the insurance company, avoiding jury confusion and promoting settlement—make it error to refuse a motion to bifurcate the same two *issues* when the insured's only claim is bad faith?

¶ 5. We conclude the following:

(A) Some breach of contract is a fundamental prerequisite for a first-party bad faith claim against an insurer.

(B) Breach of contract and first-party bad faith are separate claims.

(C) An insured may file a bad faith claim without also filing a breach of contract claim. The policies articulated in *Dahmen v. American Family Mutual Insurance Co.*, 2001 WI App 198, 247 Wis. 2d 541, 635 N.W.2d 1, which require bifurcation when both bad faith and breach of contract claims are brought together, are only partially applicable when a party has chosen to plead only a bad faith claim.

(D) The insured may not proceed with discovery on a first-party bad faith claim until she has:

(1) pleaded a breach of contract by the insurer as part of a separate bad faith claim, and

28

(2) satisfied the court that she has established such a breach or will be able to prove such a breach in the future.

(E) In this case, Brethorst has supplied the insurer and the court with sufficient evidence of a breach of contract by the insurer that she may proceed with discovery on her bad faith claim. On the facts before us, Brethorst has shown uncontradicted evidence that she incurred $9,789 in medical expense for treatment from injuries she suffered in an automobile accident caused by an uninsured motorist. The insurer's failure to pay all these expenses without submitting any reasonable basis in law or fact (as opposed to theory) for its failure to do so justifies Brethorst going forward with discovery on her bad faith claim.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 6. This is an appeal from a nonfinal order of the Racine County Circuit Court, Wayne J. Marik, Judge, denying Allstate's motion to bifurcate claims and stay discovery. The court heard argument but did not conduct an evidentiary hearing. The following facts are drawn from the parties' pleadings and communications found in the record.

¶ 7. On December 12, 2006, around 8 p.m., Brethorst and her husband William were involved in a motor vehicle accident near the intersection of State Highway 32/Douglas Avenue and 4 Mile Road in Racine County. The accident was caused by an uninsured motorist, Margy L. Raymond, who was highly intoxicated when she pulled her vehicle onto the highway in front of the Brethorsts' vehicle. William Brethorst was driving the Brethorsts' vehicle at the time, and Wanda Brethorst sustained injuries as a result of the ensuing

collision. The Brethorsts were insured under an automobile liability policy with Allstate. Their policy included coverage for injuries caused by an uninsured motorist as well as $5,000 in medical expenses.

¶ 8. Wanda Brethorst submitted a UM claim to Allstate for her injuries from the accident about January 23, 2007. In a March 1 letter to the law firm representing the Brethorsts,[2] an Allstate employee, Diane Watke, acknowledged receipt of the claim and stated that she had begun working on it. The letter added, "Losses are always difficult, but rest assured that we will work to make the claim process smooth and resolve the claim promptly."

¶ 9. On March 27, Ms. Watke sent a second letter addressed to attorney Timothy S. Knurr (Knurr), inquiring whether William Brethorst had received medical treatment and "how much longer" Wanda Brethorst would continue to be treated by PT Plus, which was providing Brethorst with physical therapy. On April 4, Knurr responded that William was not claiming injury and that Knurr did not know how much longer Wanda Brethorst's treatment would continue, but that "[w]e will keep you posted."

¶ 10. In another letter dated April 4, an Allstate employee named Michael Kahn (Kahn) informed Knurr that he had assumed the handling of Brethorst's claim. Kahn stated that Allstate viewed the occurrence as "a minor accident" and "wouldn't expect much of any injury and treatment." The letter added: "Please send us your demand material so we can attempt to conclude this matter in the near future." The letter also attached photos and a damage estimate on the Brethorsts' ve-

[2] The Brethorsts were represented by Schoone, Leuck, Kelley, Pitts & Knurr, S.C., of Racine, Wisconsin.

hicle. The damage estimate for the vehicle—a Jeep Cherokee with a plow undercarriage—was listed as $486.62.

¶ 11. In the following months, Brethorst continued to receive physical therapy for her injuries and provided Allstate notice of that ongoing treatment. In total, Brethorst incurred $9,789 in medical expenses related to treatment of her injuries. Brethorst submitted a demand for settlement of her claim on September 12, 2007.

¶ 12. On October 9 Kahn offered to settle the injury claim for $1,500 above the $5,000 in medical expenses already paid. His letter cited the severity of the impact, the damages sustained by the vehicles, injuries claimed, and medical records provided as factors considered in arriving at this amount. Kahn also reiterated Allstate's position that "this was a minor accident and [we] question any injury resulting from this accident."

¶ 13. Brethorst responded on November 16 with a letter from her treating physician, Dr. Jerome Lerner, of Advanced Pain Management. The letter stated that Dr. Lerner had examined Brethorst nine days after the accident, reviewed the report and diagnosis of her primary physician, recommended physical therapy, and had seen her several times during the course of her treatment. Dr. Lerner explained that, while Brethorst had suffered from chronic pain stemming from arthritis and fibromyalgia prior to December 12, 2006, the accident had resulted in "acute cervical and back strain/sprain," exacerbating her pre-existing conditions. Lerner wrote that the physical therapy he ordered ultimately resulted in returning Brethorst to the baseline pain she had experienced prior to the accident. Dr. Lerner further stated that in his opinion, "to a reason-

able degree of medical certainty," the physical therapy had not been ordered to treat the pre-existing conditions but instead was reasonably necessary "to treat the acute injuries from" the accident.

¶ 14. Upon receiving this letter, Kahn increased Allstate's settlement offer to $1,800. This second offer, dated December 14, referenced the low dollar amount of damage sustained by the vehicle and reiterated Allstate's assessment that the collision was only a minor accident. Kahn also pointed out that Allstate had already paid $5,000 under the policy's medical payments coverage.

¶ 15. After receiving this second offer of partial settlement, Brethorst filed suit for bad faith denial of benefits. Her January 11, 2008, complaint alleged that Allstate had adopted a company-wide policy of routinely "offering sums substantially less than the medical bills incurred" in accidents involving "minor impact soft tissue" (MIST) injuries. She asserted that her claim was assigned to Kahn because he was responsible for implementing this MIST policy. Specifically, Brethorst alleged that Allstate, by and through Kahn's actions, acted in bad faith (a) by failing to conduct a full and fair investigation of the case, (b) by failing to have her claim evaluated by anyone with medical training, and (c) by ignoring both the medical opinion of Dr. Lerner and the law of Wisconsin governing liability for medical bills and expenses.[3]

---

[3] Brethorst's complaint alleged that Allstate acted in bad faith by offering a settlement amount that "completely ignores the medical records, reports, billing statements, the law in the state of Wisconsin, and her pain and suffering and disability associated with the injuries particularly given her pre-accident medical history." At oral argument, Brethorst's counsel was asked what Allstate could have done, other than pay the $9,789

¶ 16. In its answer, Allstate admitted that it did have a MIST policy but denied Brethorst's character-ization of that policy. Allstate also asserted various affirmative defenses, including a contention that to the extent Brethorst set forth a valid claim for bad faith, that claim should be bifurcated from other claims, and proceedings on bad faith should be stayed until all other claims were resolved.

¶ 17. In keeping with this defense, Allstate filed the motion to bifurcate Brethorst's contract claim from her bad faith claim. The motion also requested a stay of all proceedings on the bad faith claim until the breach of contract claim could be resolved. In opposition to this motion, Brethorst argued that she had asserted only one claim, for bad faith, and there was accordingly nothing to bifurcate.

¶ 18. In a lengthy ruling from the bench, the circuit court denied Allstate's motion on grounds that Wisconsin law allows a party to bring a bad faith claim separate and distinct from any underlying breach of contract claim. The court noted that the policy reasons requiring bifurcation where both breach of contract and bad faith claims are raised, as articulated by the court of appeals in *Dahmen,* are inapplicable where a party elects to bring only a claim of bad faith.

¶ 19. Allstate petitioned the court of appeals for leave to file an interlocutory appeal. The court of appeals granted the petition, then certified the case to

demand for medical bills. Counsel responded, "They could have paid the medical bills plus something reasonable above and beyond that for pain and suffering that she went through for that period of about six months." Brethorst's written demand for settlement was not attached to her complaint and is not included in the record.

this court, noting that the issues presented are both novel and "ripe for clarification." We accepted certification.

## II. STANDARD OF REVIEW

¶ 20. The decision to bifurcate claims or issues in a single claim falls within the discretion of the circuit court,[4] subject to statutory limitations. *Waters v. Pertzborn,* 2001 WI 62, ¶ 31, 243 Wis. 2d 703, 627 N.W.2d 497; *see also Dahmen,* 247 Wis. 2d 541, ¶ 11. Whether to grant a stay of discovery also is a matter of discretion. *See Hofflander v. St. Catherine's Hosp.,* 2003 WI 77, ¶ 113, 262 Wis. 2d 539, 664 N.W.2d 545; *Dahmen,* 247 Wis. 2d 541, ¶ 11.

¶ 21. In determining whether the circuit court erroneously exercised its discretion, we look to whether the court examined all relevant facts, applied the proper standard of law, and reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). A decision based on a substantive error of law constitutes an erroneous exercise of discretion. *State v. Jorgensen,* 2003 WI 105, ¶ 12, 264 Wis. 2d 157, 667 N.W.2d 318.

---

[4] As the court of appeals correctly noted in *Dahmen v. American Family Mutual Insurance Co.,* 2001 WI App 198, ¶ 9, 247 Wis. 2d 541, 635 N.W.2d 1, this court held in *Waters v. Pertzborn* that only claims, not issues, may be bifurcated under Wis. Stat. § 805.05(2). *Waters v. Pertzborn* 2001 WI 62, ¶¶ 18–24, 243 Wis. 2d 703, 627 N.W.2d 497. To every rule there is an exception, however; the statute's legislative history clearly demonstrates that the rule barring bifurcation of issues was not intended to apply to cases involving insurance coverage. *Id.,* ¶¶ 21, 23.

## III. DISCUSSION

¶ 22. The court of appeals asks this court to decide whether an insured must prove a breach of contract—such as a wrongful denial of benefits—prior to seeking discovery and litigating a claim of bad faith against an insurer where there is no accompanying claim for breach of contract.

¶ 23. To resolve this issue, we first examine the development of the tort of bad faith in Wisconsin. We then turn to Allstate's request for bifurcation in the context of Brethorst's bad faith claim. Next we carefully examine the distinction between first-party and third-party bad faith claims and discuss the threshold showing that an insured must make to pursue a claim of bad faith without filing an accompanying claim for breach of contract. We then apply these principles to the first question certified in this case, regarding discovery. Finally, we briefly discuss the effect of this case as it proceeds beyond these preliminary procedural stages.

A. Development of First-Party Bad Faith in Wisconsin

¶ 24. This court initially recognized the tort of bad faith in a first-party action in *Anderson v. Continental Insurance Co.,* 85 Wis. 2d 675, 271 N.W.2d 368 (1978). The Andersons filed suit against their insurer for both breach of contract and bad faith refusal to negotiate a payment after a furnace fire or explosion resulted in damage to the contents of their home. *Id.* at 680–83. Continental objected to the bad faith claim in this circumstance on grounds that Wisconsin did not recognize such a cause of action. *Id.* at 684. This court held that, while a claim for first-party bad faith had "never been explicitly recognized in this state," an insured is entitled to bring a claim against her own insurance company for bad faith. *Id.* at 684, 686.

¶ 25. The court in *Anderson* made clear that a bad faith claim is separate and distinct from a breach of contract. *Id.* at 686. Bad faith is not the same as breach of contract, which is a "failure to pay the claim in accordance with the policy." *Id.* Rather, bad faith "is a separate intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract." *Id.* at 687.

¶ 26. The court explained that when a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. *Id.* at 691 (citing *Drake v. Milwaukee Mut. Ins. Co.,* 70 Wis. 2d 977, 984, 236 N.W.2d 204 (1975)). Thus, to bring a bad faith claim, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 691. The knowing failure of an insurer to proceed in a manner that is honest and informed constitutes bad faith. *Id.* at 692 (citing *Hilker v. W. Auto. Ins. Co.,* 204 Wis. 1, 15, 231 N.W. 257, 235 N.W. 413 (1930, 1931) (an insurer has a duty to conduct an appropriate and careful investigation prior to assessing claims)). Thus, bad faith is an intentional tort. *Id.* at 691.

¶ 27. Continental argued that recognition of a first-party bad faith cause of action would lead to extortionate lawsuits. *Id.* at 693. The court rejected this argument, noting:

[A]n insurance company ... may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis.

We are satisfied that the application of the test formulated above, which recognizes the intentional na-

ture of the tort of bad faith and puts the test upon an objective basis, will minimize the fears expressed ... that to permit claims for bad faith will result in extortionate lawsuits. Such result cannot follow when an insurance company in the exercise of ordinary care makes an investigation of the facts and law and concludes on a reasonable basis that the claim is at least debatable.

*Id.*

¶ 28. Three years later, the court reaffirmed the *Anderson* holding in the context of a bad faith refusal to negotiate. *Davis v. Allstate Ins. Co.,* 101 Wis. 2d 1, 7–8, 303 N.W.2d 596 (1981). In *Davis,* the insured was covered by a business owner's fire insurance policy with a limit of $15,000 that the insurer had recommended be raised to $25,000 after inspecting the insured's personal property. *Id.* at 3–4. After a fire destroyed the contents of the insured's office, the insurance company internally recognized the damage to be approximately $15,000, but its adjuster decided to start with a settlement offer around $4,000 and negotiate to a maximum of $14,860. *Id.* at 4. This strategy was countermanded by higher authority, which capped a payment offer at roughly $4,000, leading to a bad faith suit. *Id.* at 4, 9. The court applied the test set forth in *Anderson* and found that the insured had brought proper claims for his loss and for bad faith. *Id.* at 8–10. Because sufficient evidence had been submitted on the issue of valuation, the insured was entitled to have the question submitted to a jury. *Id.* at 10.

¶ 29. The court reexamined the conflicting interests of insurers and insureds in *Mowry v. Badger State Mutual Casualty Co.,* 129 Wis. 2d 496, 385 N.W.2d 171 (1986). Based on its belief that the automobile involved in the claim was not owned by its insured, the insurance company initially denied coverage to the tortfeasor for

his actions in causing the accident. *Id.* at 505–06. The court found this failure of the insurer to enter into settlement negotiations until after a jury determined the issue of coverage did not make the insurer liable for bad faith. *Id.* at 509, 520. Because the question of coverage was fairly debatable and a reasonable basis existed for denying the claim, the insurer could not have committed the tort of bad faith. *Id.* at 516. The court said that in the process of determining whether a reasonable basis exists for denying a claim or making a settlement offer, an insurer "must exercise reasonable diligence in ascertaining facts upon which a good-faith decision to settle or not settle must be based." *Id.* at 510.

¶ 30. The test for bad faith as articulated in *Anderson* includes both an objective and subjective component. *Weiss v. United Fire & Cas. Co.,* 197 Wis. 2d 365, 377, 541 N.W.2d 753 (1995) (citing *Benke v. Mukwonago-Vernon Mut. Ins. Co.,* 110 Wis. 2d 356, 362, 329 N.W.2d 243 (Ct. App. 1982)). In *Weiss,* a jury found that the insurer had acted in bad faith in investigating and settling the plaintiff's claim. *Id.* at 377. This finding was overturned by the circuit court. *Id.* at 373. Upon review, this court pointed to the insurer's disregard for the conclusions of a knowledgeable firefighter that the insured's home fire was not the result of arson, *id.* at 384, and other evidence surrounding the insured's claim. The court explained that a trier of fact must first determine whether the insurer acted as a reasonable insurer would have acted "under the particular facts and circumstances to conduct a fair and neutral evaluation of the claim." *Id.* at 378. The trier of fact then must consider whether a subjective intent "can be inferred from a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." *Id.* at 392 (quoting *Anderson,* 85 Wis. 2d at 693).

¶ 31. In *Danner v. Auto-Owners Insurance,* 2001 WI 90, ¶ 54, 245 Wis. 2d 49, 629 N.W.2d 159, we reiterated the principle that every insurance contract has an implied duty of good faith and fair dealing between the insurer and insured. Although the insurance contract in *Danner* gave both the insurer and the insured the right to seek arbitration in disagreements about the presence or amount of coverage, *id.,* ¶ 21, the existence of that right did not relieve the insurer of its duty to act in good faith from the inception of the contract. *Id.,* ¶ 54. When the duty of good faith is breached by the insurer and that breach results in damages, an insured has a cause of action for bad faith. *Id.,* ¶ 59.

¶ 32. The logic underlying *Danner* was extended the following year in *Jones v. Secura Insurance Co.,* 2002 WI 11, 249 Wis. 2d 623, 638 N.W.2d 575. In *Jones,* the plaintiffs' breach of contract claim was dismissed as barred by the statute of limitations, leaving only their bad faith claim. *Id.,* ¶¶ 1–2. The court held that an insurer is liable for any damages arising as a proximate result of the insurer's bad faith, including the same damages that may be recovered under a breach of contract. *Id.,* ¶¶ 2, 33, 34 (citing *DeChant v. Monarch Life Ins. Co.,* 200 Wis. 2d 559, 569, 571, 547 N.W.2d 592 (1996)).

¶ 33. In response to the insurer's argument that such a holding would expand the scope of bad faith claims in Wisconsin, the *Jones* court pointed out that bad faith is an intentional tort. *Id.,* ¶ 37. As such, a plaintiff asserting a bad faith claim assumes a higher burden than that required for breach of contract. *Id.*

¶ 34. Recently, in a third-party case, the court held that an insured may assert a bad faith claim where the insurer, acting in bad faith, fails to settle the claim for less than the policy deductible, even though the resulting

39

judgment does not exceed policy limits. *Roehl Transp., Inc. v. Liberty Mut. Ins. Co.*, 2010 WI 49, ¶ 7, 325 Wis. 2d 56, 784 N.W.2d 542. The insurer argued that the insured's claim should not be recognized as arising within the scope of bad faith law in Wisconsin. *Id.*, ¶¶ 19–20. The insurer identified three types of bad faith claims that had previously been recognized: (1) a third-party bad faith claim where the insurer subjects its insured to potential liability by failing to settle a claim within liability limits; (2) a first-party bad faith claim for unreasonable withholding of payments; and (3) a first-party claim for an insurer's failure to reimburse a claimant for a worker's compensation claim. *Id.*, ¶ 27.

¶ 35. The court determined that these three categories were not exhaustive of bad faith claims that may be brought in Wisconsin. *Id.*, ¶ 36. In recognizing the plaintiff's claim in *Roehl,* the court stated that "the three identified types of insurance bad faith claims arise from fact situations presented to the court *to date.*" *Id.* (emphasis added). Where a new fact pattern is presented, the court must look to the principles of the tort of bad faith to determine whether the claim is proper. *Id.*, ¶ 37. Significantly, a bad faith claim arises from the contractual relationship between the parties, but is not a contract action. *Id.*, ¶¶ 40–42. The purpose behind providing a bad faith cause of action to an insured is to "protect against the risk that an insurance company may place its own interests above those of the insured and that the recovery available to the insured for breach of contract would not fully compensate the insured for the resulting harms." *Id.*, ¶ 50.

¶ 36. The court's holdings on first-party bad faith have been summed up in the civil jury instructions. The standard instruction for "Bad Faith By Insurance Company: Assured's Claim" provides as follows:

To prove bad faith against (*insurance company*), the (*plaintiff*) must establish that there was no reasonable basis for the insurance company's denying (*plaintiff*)'s claim for benefits under (his)(her) policy and that (*insurance company*), in denying the claim, either knew or recklessly failed to ascertain that the claim should have been paid.

Bad faith on the part of an insurance company towards its insured is the absence of honest, intelligent action or consideration of its insured's claim.

Bad faith exists if, upon an examination of the facts found by you, you are able to conclude that (*defendant*) had no reasonable basis for denying (*plaintiff*)'s claim.

In answering this question, you may consider whether (*plaintiff*)'s claim was properly investigated and whether the results of the investigation were given a reasonable evaluation and review. If you find that (*insurance company*) either refused to consider the (*plaintiff*)'s claim for damages, made no investigation, or conducted its investigation in such a way as to prevent it from learning the true facts upon which the (*plaintiff*)'s claim is based, the insurance company can be found to have exercised bad faith. This is because you may infer from these facts a reckless disregard on the insurance company's part to learn that there was no reasonable basis for it to deny (*plaintiff*)'s claim.

If, on the other hand, you find that the insurance company, after conducting a thorough investigation of the facts and circumstances giving rise to the (*plaintiff*)'s claim, reasonably concluded that the claim is debatable or questionable, then there is no bad faith even though it refused to pay the claim.

Wis JI—Civil 2761.

¶ 37. With these principles in mind, we turn to Allstate's arguments in favor of bifurcation of Brethorst's bad faith claim and stay of discovery.

41

## B. Allstate's Request for Bifurcation

¶ 38. In *Dahmen,* the court of appeals was faced with an underinsured motorist (UIM) case in which the insured sued the insurer for (1) UIM benefits under the insured's policy, and (2) bad faith. The insurer's request to bifurcate the two separate claims and to stay discovery on the second claim was denied by the circuit court. The court of appeals reversed. It concluded that the risk of prejudice and jury confusion inherent in litigating a claim of bad faith with an underlying claim of UIM benefits required bifurcation and a stay of discovery. *Dahmen,* 247 Wis. 2d 541, ¶ 1.

¶ 39. The court of appeals addressed the request to bifurcate claims, saying that "the trial court must consider the potential prejudice to the parties, the complexity of the issues, the potential for jury confusion and the issues of convenience, economy and delay." *Id.,* ¶ 11 (citing *Hoffman v. Merrell Dow Pharm., Inc.,* 857 F.2d 290, 306–08 (6th Cir. 1988)). It noted that in litigating a claim of bad faith, the Dahmens "will be entitled to discovery of [the insurer's] work product and attorney/client material containing information relevant as to how the [ ] claim was handled. This information would include [the insurer's] internal determination to deny benefits, its evaluation as to how a jury may value the Dahmens' claim and its approach to settlement." *Id.,* ¶ 13. It added: "This information would not be available to the Dahmens if they were proceeding solely on a claim for UIM benefits." *Id.* The court concluded that:

> [T]he considerations bearing on the bifurcation decision weigh in favor of bifurcation for the following reasons: (1) the failure to bifurcate a claim of bad faith from an underlying claim for UIM benefits would significantly prejudice American Family; (2) the two distinct claims present differing evidentiary require-

42

ments that increase the complexity of the issues and the potential for jury confusion; and (3) a separate initial trial on the claim of UIM benefits increases the prospect of settlement and promotes economy by narrowing the issues for the jury and potentially eliminating the need for a later trial on the bad faith claim.

*Id.*, ¶ 20.

¶ 40. The analysis and policy embodied in *Dahmen* are the source of Allstate's two-part motion in this case. Allstate moved the circuit court for bifurcation of "the plaintiff's bad faith claim from the [UM] contract claim and staying all proceedings on the bad faith claim *until the contract claim is resolved.*" (Emphasis added.) Allstate's trial brief expanded on this motion, asking that "discovery on the bad faith claim be stayed while the plaintiff's personal injury claim is *litigated.*" (Emphasis added.) "[T]he plaintiff should not be entitled to discover or use privileged material by virtue of having filed a bad faith claim unless and until the underlying personal injury claim has been finally resolved. Otherwise, the defendant will be unfairly prejudiced."

¶ 41. Conversely, the plaintiff and the circuit court emphasized a key distinction between this case and *Dahmen:* that the plaintiff had filed *only* a bad faith claim. The circuit court thought this distinction was material. The court said:

> The plaintiff absolutely insists . . . that it has not and does not intend to plead a cause of action for breach of the insurance [contract]. That [its] pleading be interpreted and be prosecuted solely as a bad faith claim.
>
> [T]he ultimate issue as it was framed here . . . is basically whether the plaintiff can do that or whether a party must prevail upon a claim for breach of contract by establishing an inadequate offer before it can proceed on the separate and independent cause of action for bad faith. . . .

43

[F]rom the Court's perspective [the] issue as it was refined raises a question as to what relief the Court might properly be able to grant on this motion. It's a motion to bifurcate and stay where essentially there is nothing to bifurcate because a party refuses to bring one of the causes of action that would be bifurcated.

## C. Analyzing the Tort of Bad Faith

¶ 42. Allstate's motion implicates a question that this court avoided in *Danner*, namely, whether an insured's first-party claim of bad faith may exist in the absence of coverage or in the absence of some other breach of contract by the insurer. *See Danner*, 245 Wis. 2d 49, ¶ 54 & n.6. The answer to this question affects whether or when an insured may file a bad faith claim without filing a simultaneous claim for breach of contract. If a first-party bad faith claim may be filed independent of a claim for breach of contract, what prerequisites, if any, are required for the plaintiff to proceed to discovery on the bad faith claim?

¶ 43. In *Anderson* the court was dealing with a direct claim by insureds (the Andersons) against their insurer. The Andersons claimed that the insurer not only breached their contract but also acted in bad faith.

¶ 44. *Anderson* is a landmark case because it was the first case in Wisconsin to recognize an intentional tort in an insurer's bad faith handling of a damage claim by its own insureds under the insureds' policy. In short, *Anderson* was the first successful first-party claim against an insurer.

¶ 45. *Anderson* was not the first bad faith case in Wisconsin. Almost a half-century earlier, *Hilker* involved an insurer's bad faith handling of a liability claim by a *third*-party against its insured. *Hilker*, 204 Wis. at 3. The insured was a tortfeasor; however, the

insurer's bad faith handling of the case against the insured tortfeasor saddled the insured with more than twice the damages covered by the insured's policy. *Id.* at 9–10. The insurer's misconduct in handling the claim led to the insurer's liability for damages well beyond the limits of the insured's policy. *Id.*

¶ 46. The court in *Hilker* explained this result:

> In express terms the contract imposes no duty at all a breach of which makes the insurer liable to the insured for a failure to settle or compromise a claim. However, all courts are agreed that the insurer does owe to the insured some duty in this respect. This duty is implied as a correlative duty growing out of certain rights and privileges which the contract confers upon the insurer. By the terms of this contract the absolute control for the defense of such actions is turned over to the insurer, and the insured is excluded from any interference in any negotiations for settlement or legal procedure. It is generally understood that these are rights and privileges which it is necessary for the insurer to have in order to justify or enable it to assume the obligations which it does in the contract of insurance. . . . [W]here an injury occurs for which a recovery may be had in a sum exceeding the amount of the insurance, the interest of the insured becomes one of concern to him. *At this point a duty on the part of the insurer to the insured arises.* It arises because the insured has bartered to the insurance company all of the rights possessed by him to enable him to discover the extent of the injury and to protect himself as best he can from the consequences of the injury. He has contracted with the insurer that it shall have the exclusive right to settle or compromise the claim, to conduct the defense, and that he will not interfere except at his own cost and expense. . . .
>
> It is the right of the insurer to exercise its own judgment upon the question of whether the claim

45

should be settled or contested. But because it has taken over this duty, and because the contract prohibits the insured from settling, or negotiating for a settlement, or interfering in any manner except upon the request of the insurer, such as assisting in the securing of witnesses, etc., its exercise of this right should be accompanied by considerations of good faith. Its decision not to settle should be an honest decision.

*Id.* at 13–14 (emphasis added).

¶ 47. The *Anderson* court quoted some of this language to support its statement that, "In *Hilker,* the duty on the insurance company was found to be analogous to that of a fiduciary." *Anderson,* 85 Wis. 2d at 688.

¶ 48. In circumstances like *Hilker,* the insurer's complete takeover of the insured's defense creates a quasi-fiduciary relationship. That relationship is different from the insurer-insured relationship in a first-party claim. In a first-party bad faith claim, the insured insists that the insurer wrongfully denied benefits or intentionally mishandled a legitimate claim for benefits.

¶ 49. Traditionally, to prove a first-party bad faith claim, the insured has been required to establish two elements. The first element is that there is no reasonable basis for the insurer to deny the insured's claim for benefits under the policy. This "first prong . . . is objective." *Weiss,* 197 Wis. 2d at 377 (citing *Benke,* 110 Wis. 2d at 362). The second element is that the insurer knew of or recklessly disregarded the lack of a reasonable basis to deny the claim. This second prong is subjective. *Id.*

¶ 50. This traditional analysis is derived from the *Anderson* case in which bad faith was acknowledged to be a separate claim, but the bad faith claim was accompanied by a claim for breach of contract. Historically, the two separate claims have gone together. Even in *Jones,* there was little dispute that there had been a breach of contract by the insurer.

¶ 51. The present case is the first to come before this court in which the insured has initiated a bad faith claim without filing any accompanying claim for breach of contract. Thus, this case is not covered by our longstanding law, and it requires additional analysis.

[4]

¶ 52. Clearly, a person cannot have a valid first-party bad faith claim against an insurer if the person has no contract with the insurer: first, because there would be no coverage, and second, because the insurer's implied covenant of good faith and fair dealing arises out of the relationship created by the contract. If there is no contract, the insurer has no duty to act in good faith with respect to a claim.

¶ 53. The issue becomes a bit more complicated when there is in fact an insurance contract. Still, it is hard to conceive of a situation in which the insurer would have "no reasonable basis" for denying the insured's claim if there were no coverage for the claim under the insurance contract. This is the hypothetical situation posed in *Danner:* "whether an insured may recover damages for first-party bad faith when a court determines that the policy does not cover the insured's claim." *Danner,* 245 Wis. 2d 49, ¶ 54 n.6.

¶ 54. In discussing first-party claims, Arnold Anderson has written the following:

> Three elements are needed to establish the tort of bad faith: (1) the terms of the policy obligated the insurance company to pay the claim; (2) the insurer lacked a reasonable basis in law or fact for denying the claim; and (3) the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

Arnold Anderson, *Wisconsin Insurance Law*, § 9.4, at 5 (6th ed. 2010).

¶ 55. Anderson's treatise makes explicit what is implicit in the two-prong test, namely, that the insurance contract provided coverage and required payment by the insurer. His analysis also parallels *Couch on Insurance* 3d, §§ 198:28:

> An insurer's duty of investigation is generally construed to require sufficient investigation to determine coverage under the policy in question. The duty therefore requires that the insurer investigate before it denies or settles a claim . . . .
>
> *If a claim is beyond the scope of coverage, however, the duty to investigate is not separately actionable, as that would be outside the entire contractual basis for both the duty to investigate, and the duty of good faith and fair dealing.*

14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* §§ 198:28 at 198–53 to 198–55 (3d ed. 2007) (emphasis added).

■

¶ 56. This analysis substantiates the need to establish a wrongful denial of some contracted-for benefit before permitting discovery for a bad faith claim. The fact that a first-party bad faith claim is a separate tort and may be brought without also bringing a breach of contract claim, does not change the fact that first-party bad faith cannot exist without some wrongful denial of benefit under the insurance contract.[5]

---

[5] In *DeChant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 569, 547 N.W.2d 592 (1996), the court observed, in relation to a first-party bad faith claim: "It is well-settled that if an insurer fails to deal in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss *covered by the policy,* such conduct may give rise to a cause of action in tort for

¶ 57. There is, of course, an opposite viewpoint. It is outlined in Justice Bradley's concurrence which cites Attorney Stephen S. Ashley's treatise in *Bad Faith Actions*. Ashley writes that the question "whether an insurer may recover damages for bad faith, even if the court ultimately determines that his policy did not cover his claim," is one of the most "hotly debated issues in the law." Stephen S. Ashley, *Bad Faith Actions: Liability & Damages*, § 5A:02 at 2 (2d ed. 1997).

¶ 58. Attorney Ashley acknowledges that the "problem of bad faith in the absence of coverage arises infrequently." *Id.* at 7. He states that some cases support "the recovery of compensation for bad faith in the absence of coverage; others do not." *Id.* at 6. We note that some of the cases Attorney Ashley cites in support of compensation are based on statutes governing insurance trade practices. There appear to be relatively few cases that actually provide damages for an insurer's bad faith in the absence of a wrongful denial of benefits.

¶ 59. Our principal concern in this case involves what prerequisites, if any, are required for a plaintiff to proceed to discovery on a bad faith claim. May the circuit court authorize discovery on a bad faith claim without any showing by the plaintiff that the insurer has wrongfully denied benefits under the insurance contract?

¶ 60. In her concurrence, Justice Bradley points to a hypothetical devised by Attorney Ashley as a pertinent example of an insurer's bad faith, despite the absence of coverage under an insurance contract. Jus-

bad faith." (Emphasis added.) This follows the language in *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 691, 271 N.W.2d 368 (1978), that "a plaintiff must show the absence of a reasonable basis for *denying benefits of the policy.*" (Emphasis added.)

49

tice Bradley's concurrence, ¶ 13 (citing *Ashley, supra,* at (5A:10). In the hypothetical, the insured observes cracks in the foundation of his house. The insured cannot tell by looking at the cracks whether they were caused by "subsidence" (an excluded peril under the policy) or by contractor negligence (a covered peril). "The insured submits a claim under his policy and requests that the insurer investigate the matter." *Id.* The suggestion is made that the insurer, on these facts, is required to hire a soils engineer to investigate the cause of the cracks. When the insurer fails to do so and the insured incurs $5,000 in expenses to hire the soils engineer, the insurer is liable in bad faith for the cost of the soils engineer, even though the engineer discovers that contractor negligence had nothing to do with the cracks. *Id.*

■

¶ 61. An insurer in Wisconsin is required to conduct an appropriate and careful investigation before assessing a claim. We think the insurer in the hypothetical would be obliged to explain to the insured that only contractor negligence, not subsidence, would be covered by the policy and that the insured would be required to claim contractor negligence as the source of the cracks. An appropriate and careful investigation would not necessarily require the insurer to hire a soils engineer to evaluate the cause of the cracks.

¶ 62. Sometimes, the insured has the burden to establish coverage. When the insured accomplishes this objective and is able to show his insurer's bad faith, the insurer will be liable to the insured "for any damages which are the proximate result" of the bad faith, including attorney fees. *DeChant,* 200 Wis. 2d at 571.

¶ 63. *Jones* is consistent with our analysis. The Joneses presented a notice of loss to their insurer in

May 1997. They did not file a lawsuit alleging breach of contract until March 1999. This specific claim in their suit was dismissed on grounds that it was barred by a one-year statute of limitations. The facts of the case show that the insurer did not conduct a complete investigation of the claim before summarily denying coverage for a loss insured by an all-risk policy and that there was ample evidence that there had been coverage under the policy. Before this court, quoting *Taylor v. State Farm Fire & Casualty Co.*, 981 P.2d 1253, 1258 (Okla. 1999), the insureds' counsel, Shane W. Falk, contended that:

> [W]hile no identifiable *ex contractu* recovery is achieved by the victorious bad-faith plaintiff, *indemnity for loss (under the contract) constitutes the centerpiece element of damages included in every ex delicto recovery for bad-faith refusal to settle.*

(Emphasis added.)

¶ 64. Thus, while *Jones* held that a bad faith *claim* need not be accompanied by a breach of contract *claim,* it did not hold that a first-party bad faith claim need not be accompanied by a breach of contract. Instead, the court in *Jones* focused on the proximate result standard for damages in a bad faith claim; its analysis revolved around the damages stage of proceedings. *Jones,* 249 Wis. 2d 623, ¶ 35. In the instant case, however, the court focuses on a different, earlier stage of the proceedings, and determines whether a claim may even be brought when a party has a choice between a breach of contract accompanied by a bad faith claim, or a bad faith claim alone. What damages may be available to Brethorst in the final analysis—if she prevails—cannot be determined until she has first been allowed to proceed with her claim—and to proceed with

discovery. If she is allowed to go forward and prevails, then the principles and rationale in *DeChant* and *Jones* will control what damages are recoverable.

■

¶ 65. In sum, we conclude that some breach of contract by an insurer is a fundamental prerequisite for a first-party bad faith claim against the insurer by the insured.

■

¶ 66. We reach this conclusion with some misgivings because we do not countenance bad behavior by insurers against their insureds. The hypothetical issue presented is whether an insurer's egregious conduct toward its insured is sufficient, in effect, to *create* coverage for the insured that does not otherwise exist under the policy. We conclude that creating coverage is not an appropriate remedy in this situation.

■

¶ 67. First, creating coverage is not consistent with the thrust of *DeChant,* namely, that "the insurer is liable for any damages which are the proximate result" of the "duty imposed as a consequence of the relationship established by contract." *DeChant,* 200 Wis. 2d at 569–70 (quoting *Anderson,* 85 Wis. 2d at 687). Contract damages are not the "proximate result" of bad behavior; they are the result of a breach of contract.

■

¶ 68. Second, creating coverage is not consistent with the principle that no contract of insurance should be rewritten to bind an insurer to a risk which it did not contemplate and for which it was not paid. *Folkman v. Quamme,* 2003 WI 116, ¶ 34, 264 Wis. 2d 617, 665 N.W.2d 857; *Sentry Ins. v. Ziegler,* 172 Wis. 2d 70, 79, 492 N.W.2d 621 (1992).

¶ 69. Third, permitting a party to succeed on a first-party bad faith claim completely uncoupled from a prerequisite breach of contract would invite the filing of unmeritorious claims, focused on the insurer's alleged misconduct.[6]

¶ 70. An insurer's bad behavior unrelated to a breach of contract might be subject to some sanction, but it does not warrant a first-party bad faith claim.

### D. Discovery

¶ 71. The discussion in section C. is a necessary prelude to the resolution to the first certified question: "Whether a finding of wrongful denial of benefits is a condition precedent to proceeding with discovery in a first-party bad faith claim based on wrongful denial of benefits?"

¶ 72. If the procedural facts in this case were the same as the procedural facts in *Dahmen,* the answer would appear to be "yes." But the procedural facts here are not the same as in *Dahmen.*

---

[6] In a recent law review article, Victor E. Schwartz and Christopher E. Appel write:

> As intended, plaintiffs' ability to bring a separate tort action has helped to curb abuse and unfair practices. Unfortunately, as quickly as bad-faith law developed to come to the aid of the disadvantaged party in a contract or fiduciary relationship, it has evolved into a litigation quandary that often misses its basic purpose. . . . In some cases, enterprising plaintiffs' attorneys seek out technical violations to bring a bad-faith action where there is no purposeful or malevolent will, or even a remotely unfair act. In legitimizing such claims, bad-faith law has lost its way.

Victor E. Schwartz & Christopher E. Appel, *Common-Sense Construction of Unfair Claims Settlement Statutes: Restoring the Good Faith in Bad Faith,* 58 Am. U. L. Rev. 1477, 1478 (2009).

¶ 73. Brethorst filed only one claim—bad faith. Her strongest argument is that she demanded compensation for $9,789 in medical expenses, and the insurer, without a reasonable basis, never offered more than $1,800 above the $5,000 in medical expenses provided by the policy.

¶ 74. The gap between what was demanded—$9,789—and what was offered—$6,800—is $2,989. This small amount would be costly for the insured to prove if the court were to require a separate trial. Requiring a separate trial to *litigate* a breach of contract on this amount would seriously disadvantage the insured. However, permitting the court to "find" a wrongful denial of benefits without affording the insurer a trial by jury, if one were requested, would create constitutional problems.

¶ 75. We conclude that the policies articulated in *Dahmen,* which require bifurcation and a stay of discovery when both bad faith and breach of contract claims are brought together, are only partially applicable when a party has chosen to plead only a bad faith claim. In that circumstance, the circuit court must fashion means to protect the insurer from unwarranted discovery of the insurer's "work product and attorney/client material," *Dahmen,* 247 Wis. 2d 541, ¶ 13.[7]

---

[7] The scope of bad faith discovery is more expansive than that allowed for breach of contract actions. Because a plaintiff must show that the insurer did not have a reasonable basis for its actions in order to prove bad faith, internal information that would otherwise be privileged is subject to discovery. *Dahmen,* 247 Wis. 2d 541, ¶¶ 12–13. A plaintiff bringing a bad faith claim is entitled to the insurer's work product as well as attorney-client material related to how the claim was handled. *Id.*

¶ 76. Given our analysis of the requirements for a first-party bad faith claim, we conclude that the insured may not proceed with discovery on a first-party bad faith claim until it has pleaded a breach of contract by the insurer *as part of a separate bad faith claim* and satisfied the court that the insured has established such a breach or will be able to prove such a breach in the future. Stated differently, an insured must plead, in part, that she was entitled to payment under the insurance contract and allege facts to show that her claim under the contract was not fairly debatable. To go forward in discovery, these allegations must withstand the insurer's rebuttal.

¶ 77. The insurer, in turn, must be permitted to challenge the elements of the claim, not only by a responsive pleading, but also by motion. It must be permitted to show that it did not breach the contract or that there was a reasonable basis for its conduct in denying, paying, or processing a claim. *Anderson,* 85 Wis. 2d at 693.

¶ 78. An insured choosing to pursue only a claim for bad faith must plead facts which, if proven, would demonstrate not only that the insurer breached its contract with the insured but also that there was no reasonable basis for not honoring the terms of the contract.

¶ 79. A plaintiff's failure to make this preliminary showing would be grounds for the court to grant a motion for summary judgment under Wis. Stat. § 802.08(2). *See Artmar, Inc. v. United Fire & Cas. Co.,* 34 Wis. 2d 181, 188, 148 N.W.2d 641 (1967) (summary judgment is appropriate where there is no issue of fact

and the party has made a prima facie case through its pleadings and affidavits). In other circumstances, such a failure might warrant dismissal under Wis. Stat. § 802.06(2)(f). *See Larson v. City of Tomah*, 193 Wis. 2d 225, 227, 532 N.W.2d 726 (1995) (a complaint should be dismissed when, even taking all the facts set forth in the complaint as true, the complaint fails to state a claim upon which relief may be granted).

¶ 80. The court of appeals recognized the importance of this preliminary showing of the bad faith element in *Farmers Automobile Insurance Ass'n v. Union Pacific Railway Co.*, 2008 WI App 116, 313 Wis. 2d 93, 756 N.W.2d 461. In *Farmers,* the circuit court granted the insurer's motion for summary judgment before the insured had an opportunity to conduct discovery on the claim file. *Id.*, ¶ 26. "A prerequisite to discovery in a bad-faith case is [ ] some evidence that what the insurance company did was objectively unreasonable because there is no claim for bad faith if it was not." *Id.* Because the insured had failed to put forth evidence that the insurer's conduct was objectively unreasonable, there was no entitlement to bad faith discovery. *Id.*, ¶ 28. We affirmed the court of appeals in all respects, noting that if the insured "shows prima facie evidence of a reviewable claim . . . discovery is potentially available." *Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 2009 WI 73, ¶ 52, 319 Wis. 2d 52, 768 N.W.2d 596.

¶ 81. The need to make a preliminary showing on bad faith applies even more to a claimed breach of contract. The court must be satisfied that the claimed breach of contract is well founded and can be proved in the future.

## E. Effect of This Case

¶ 82. The requirements set out above are designed to protect the interests of both the insurer and the insured. They do not benefit the insurer here.

¶ 83. In this case, the insured did not fail to plead a breach of contract through her bad faith claim. The complaint discussed the accident; alleged that Margy L. Raymond, an uninsured motorist, was negligent in causing the accident; alleged that Brethorst "did sustain injuries and damages including past medical bills and past pain/suffering and disability," "as a direct and proximate result of the motor vehicle accident"; alleged that Brethorst's Allstate policy covered UM claims and that given the facts and circumstances of the accident, "Allstate . . . would be liable and obligated to pay to Brethorst 100 per cent of the damages sustained by Brethorst as a direct result of" the uninsured motorist's negligence. The complaint alleged that Brethorst incurred not less than $9,789 in past medical and hospital expenses, that she made a demand for these expenses and provided documentation of them, but that "at all times material hereto, the offer of Allstate . . . was less than the medical bills incurred by Wanda Brethorst."

¶ 84. The complaint also referred to the report prepared by Dr. Jerome Lerner and attached it as an exhibit. The report stated Dr. Lerner's opinions, "to a reasonable degree of medical certainty," that the physical therapy he ordered was "not ordered to treat her pre-existing conditions," but was "ordered and provided to treat acute injuries from the motor vehicle accident and the associated aggravation of her pre-existing pain."

¶ 85. No doubt Allstate disagreed with Brethorst's claim, believing that her accident was minor and questioning whether "any injury" resulted from the accident.

But Allstate's belief that Brethorst's injury did not result from the accident is speculation, not yet supported by fact. Allstate provided nothing to the circuit court to undermine Brethorst's story. It provided nothing to justify its failure to pay, except its wholly unsubstantiated theory that a minor accident could not seriously aggravate a pre-existing injury, causing $9,789 in medical expenses and compensable pain. Allstate's *theory* is not enough.

¶ 86. At any future trial, Brethorst will be required to prove her injuries and the resulting breach of contract, but at this point the complaint with supporting documentation fully satisfies the burden she was required to meet to proceed with discovery on her claim for bad faith. Although we disagree with some of the circuit court's analysis, we conclude that Judge Marik properly exercised his discretion in denying Allstate's motion for a bifurcated trial and a stay of discovery. Therefore, the order of the circuit court is affirmed. We offer no comment on Allstate's response to Brethorst's demand respecting pain and suffering, inasmuch as Brethorst's demand in this regard is not part of the record.

*By the Court.*—The order of the circuit court is affirmed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 87. ANN WALSH BRADLEY, J. (*concurring*). Like the majority, I conclude that Brethorst's freestanding claim for bad faith can proceed. In my view, however, the majority obscures what should be a straightforward analysis. Because it needlessly alters the well-established law and creates out of whole cloth new pleading requirements and uncertain procedures that are unnecessary and confusing, I respectfully concur.

I

¶ 88. In this case, Brethorst's complaint alleged only one cause of action: a tort claim for bad faith. She did not file a breach of contract claim along with the tort claim. The court of appeals certified this appeal, asking whether a finding of wrongful denial of benefits is a condition precedent to proceeding with discovery in a first-party bad faith claim based on wrongful denial of benefits. *See* majority op., ¶ 4. The majority appears to conclude that it is. *Id.*, ¶ 65.

¶ 89. Initially, the majority cites and seems to embrace well-established precedent providing that the tort of bad faith has two elements: "[A] plaintiff must show [1] the absence of a reasonable basis for denying benefits of the policy and [2] the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.*, ¶ 26. Yet, rather than relying on Wisconsin case law, the majority cites instead two treatises which assert that there are three elements to a bad faith claim. *Id.*, ¶¶ 54–55 (citing Arnold Anderson, *Wisconsin Insurance Law* (6th ed. 2010); *Russ & Segalla, Couch on Insurance* (3d ed. 2007)).

¶ 90. To be entitled to discovery on a freestanding bad faith claim, the majority concludes that an insured must make a "threshold showing." *Id.*, ¶ 23. In explaining what is required, it says that the insured must "plead[] breach of contract by the insurer as part of a separate bad faith claim," "must plead . . . that she was entitled to payment under the insurance contract," must "allege facts to show that her claim under the contract was not fairly debatable," and "must plead facts which, if proven, would demonstrate . . . that the insurer beached its contract." *Id.*, ¶¶ 76, 78. The insurer then has the opportunity to rebut those pleadings

59

and allegations. *Id.*, ¶ 76. Ultimately, the insured must "satisf[y] the court that the insured has established such a breach or will be able to prove such a breach in the future." *Id.*, ¶ 76.

## II

¶ 91. It is well established that in Wisconsin, there are two elements of a bad faith claim. A plaintiff must show (1) "the absence of a reasonable basis for denying benefits of the policy"; and (2) "the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 691, 271 N.W.2d 368 (1978); *Trinity Evangelical Lutheran Church v. Tower Ins. Co.*, 2003 WI 46, 261 Wis. 2d 333, 661 N.W.2d 789; *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 377, 541 N.W.2d 753 (1995); *Warmka v. Hartland Cicero Mut. Ins. Co.*, 136 Wis. 2d 31, 34, 400 N.W.2d 923 (1987); *Danner v. Auto-Owners Ins.*, 2001 WI 90, ¶ 61, 245 Wis. 2d 49, 629 N.W.2d 159; *Mowry v. Badger State Mut. Cas. Co.*, 129 Wis. 2d 496, 516, 385 N.W.2d 171 (1986).

¶ 92. The jury instruction confirms that there are two elements of the tort:

> To prove bad faith against (insurance company) the (plaintiff) must establish that there was no reasonable basis for the insurance company's denying (plaintiff)'s claim for benefits under (his)(her) policy and that (insurance company), in denying the claim, either knew or recklessly failed to ascertain that the claim should have been paid.
>
> Bad faith on the part of an insurance company towards its insured is the absence of honest, intelligent action or consideration of the insured's claim.

60

> Bad faith exists if, upon an examination of the facts found by you, you are able to conclude that (defendant) had no reasonable basis for denying (plaintiff)'s claim. . . .

Wis. JI-Civil 2761.

¶ 93. Rather than affirming this well-established standard, the majority relies on treatises for the proposition that the tort of bad faith has three elements.[1] In so doing, it is clear that the majority is altering well-established law. But to what, exactly, is the majority altering the law? It is unclear whether the majority is really adding an additional element to the tort of bad faith, or whether it instead concludes that breach of contract is merely a shadow element of the tort.

¶ 94. The majority's apparent need to alter the well-settled law arises because it fails to fully grasp the relationship between an insurance contract and the tort of bad faith. An insurance contract and the relationship it creates contain more than the company's bare promise to cover and pay certain claims and amounts. Implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured—the implied contract of good faith and fair dealing.

¶ 95. One court has explained that "[t]he [insurance] industry itself seems to recognize these principles" because its advertising portrays customers as being "in good hands." Such slogans "emphasize a special type of relationship between the insured and the insurer" in which trust and confidence have some part. *Rawlings v. Apodaca*, 726 P.2d 565, 571 n.3 (Ariz. 1986).

---

[1] I have for years appreciated the work of Attorney Arnold Anderson and have consulted his treatise, *Wisconsin Insurance Law*. Here, however, I respectfully disagree with the proposition that the tort of bad faith has three elements.

¶ 96. Accordingly, in every insurance contract, there is an implied contractual duty of good faith and fair dealing. *Jones v. Secura Ins. Co.*, 2002 WI 11, ¶ 13, 249 Wis. 2d 623, 638 N.W.2d 575. When the existing elements of the tort of bad faith are examined, it becomes apparent that there is overlap between a breach of the implied contractual duty of good faith and fair dealing and the first element of the tort of bad faith.

¶ 97. The first element, the absence of a reasonable basis for denying benefits of the policy, is objective. *Weiss,* 197 Wis. 2d at 377–78. At trial, the plaintiff will be required to prove a negative—that there was no reasonable basis for denying benefits. The plaintiff's bad faith claim would be defeated by the existence of an objectively reasonable basis for denying the benefits.

¶ 98. If an insurance company denies payment without an objectively reasonable basis for doing so, then the insurance company has breached its duty of good faith and fair dealing. Contrary to the majority's conclusion, breach of contract is neither an element nor a condition precedent of a bad faith claim. Rather, a breach of the implied contractual duty of good faith and fair dealing is inherent in the first element of the tort.

¶ 99. Further, the majority's analysis fails to distinguish between the contractual duty of good faith and fair dealing and coverage. It contends that "it is difficult to conceive of a situation" where there could be bad faith in the absence of coverage. Yet, such a scenario is readily envisioned in a leading treatise about bad faith actions:

> [S]uppose that an insured observes cracks in the foundation of his house. The insured cannot tell by looking at the cracks whether they were caused by subsidence (an excluded peril under the policy) or by contractor

negligence (a covered peril). The insured submits a claim under his policy and requests that the insurer investigate the matter. Instead of hiring a soils engineer to investigate the cause of the cracks, the insurer embarks on a campaign to intimidate the insured into accepting a pittance in settlement of the claim. The insured incurs $5,000 in expenses to hire a soils engineer, who conducts a competent investigation and discovers that contractor negligence had nothing to do with the cracks. The thesis that no coverage means no bad faith would leave the insured without compensation in this example.

Stephen S. Ashley, *Bad Faith Actions* § 5A:02 (2d ed. 1997).

¶ 100. Because the majority fails to detangle the concepts of coverage and the contractual duty of good faith and fair dealing, it sets up a false choice. It contends that bad faith in the absence of a breach of contract is tantamount to "creating coverage." Majority op., ¶ 66. The above scenario illustrates that an insurer's breach of the implied duty of good faith and fair dealing may cause compensable harm to the insured—even if it were later determined that there was no coverage under the policy.

### III

¶ 101. The majority creates out of whole cloth new pleading requirements and uncertain procedures that are unnecessary and confusing.

¶ 102. It is clear that the majority has created new pleading requirements for bringing a bad faith claim. What is unclear, however, is why the majority feels compelled to do so and what the new requirements mean. The majority even acknowledges that it has "misgivings" that its analysis may "countenance bad behavior by insurers against their insureds." *Id.*

63

¶ 103. Some of the new pleading requirements seem to be specific averments and others appear to require that facts be alleged. The majority requires as a specific averment that an insured must plead that the contract has been breached by the insurer "as part of a separate bad faith claim." *Id.*, ¶ 76. Another specific averment appears to be that "an insured must plead, in part, that she was entitled to payment under the insurance contract[.]" *Id.* Additionally, certain facts must be alleged. The insured must "allege facts to show that her claim under the contract was not fairly debatable," *id.*, and "must plead facts which, if proven, would demonstrate . . . that the insurer breached its contract[.]" *Id.*, ¶ 78.

¶ 104. So much for notice pleading. More importantly, however, why set such a trap? The majority elucidates the consequences for failing to abide by these new requirements: "A plaintiff's failure to make this preliminary showing would be grounds for the court to grant a motion for summary judgment [against the plaintiff]." *Id.*, ¶ 79. There is something out of balance when the plaintiff suffers such a consequence for failing to thread the needle of specific averments or factual allegations while at the same time the insurer will escape responsibility for egregious conduct towards its insured. *See id.*, ¶ 66.

¶ 105. The majority mandates that facts be alleged to establish the newly required legal conclusions. However, it provides little guidance on how courts should evaluate the sufficiency of the facts alleged. An examination of the majority's own application of its new requirements exacerbates the uncertainty. In determining that discovery on Brethorst's bad faith claim may proceed, the majority relies at times on Brethorst's

assertion of legal conclusions rather than relying on any allegations of fact.[2]

¶ 106. It is also unclear what procedure should be undertaken by circuit courts to evaluate the "threshold showing" mandated by the majority. *See id.*, ¶ 23. A court must be "satisfied" that the insured "has established [a breach of contract] or will be able to prove such a breach in the future." *Id.*, ¶ 76. What does this mean?

¶ 107. Should a circuit court base its determination on a gut feeling about whether it looks like the insurance contract has been breached? Or is an evidentiary showing necessary? If so, what evidence is required to "satisfy the court" that the insured has established or will be able to prove breach of contract in the future? Must circuit courts guard against the possibility of turning the hearing into a trial on the threshold element or shadow element of breach of contract—the result the insured intended to avoid by bringing a freestanding claim for bad faith?

¶ 108. The majority's approach raises more questions than it answers. Its approach is also unnecessary because established procedures already exist to address the claim before us.

¶ 109. Wisconsin's summary judgment procedure is well established. Summary judgment is appropriate if there is no substantial issue to be tried. Jay E. Grenig, *Wisconsin Practice Series: Civil Procedure* § 208.3 (4th

---

[2] The majority notes that Brethorst "alleged" that the policy "covered [uninsured motorist] claims" and that Allstate "would be liable and obligated to pay to Brethorst 100 per cent of the damages sustained by Brethorst as a direct result of the uninsured motorist's negligence." Majority op., ¶ 83.

ed. 2010). In support of a motion for summary judgment, an insurer may submit affidavits to introduce any necessary facts.

¶ 110. If the insurer can show that an objectively reasonable basis for denying the insurance claim exists, no reasonable, properly instructed jury could find that the elements of bad faith are met.[3] Under those circumstances, there is no substantial issue to be tried, and the insurer would be entitled to prevail as a matter of law.[4]

---

[3] The *Anderson* court recognized that "put[ting] the test on an objective basis[] will minimize the fears expressed . . . that to permit claims for bad faith will result in extortionate lawsuits. Such result cannot follow when an insurance company in the exercise of ordinary care makes an investigation of the facts and law and concludes on a reasonable basis that the claim is at least debatable." Majority op., ¶ 27 (quoting *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 693, 271 N.W.2d 368 (1978).

Our cases give guidance on what constitutes an objectively reasonable basis for denying benefits. In *Danner v. Auto-Owners Ins.*, 2001 WI 90, ¶ 58, 245 Wis. 2d 49, 629 N.W.2d 159, we explained that "[a]n insurance company may 'challenge claims which are fairly debatable and will be found liable [for bad faith] only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis.' "

If, for example, the insurer can demonstrate that there is no contract, *see* majority op., ¶ 52, then it would appear that there is a reasonably objective basis for denying benefits. Or it may be that there is a fairly debatable argument that there is no coverage under the policy. *See id.*, ¶ 53. In that case, if there is no other reason to conclude that the insurer breached the duty of bad faith causing damages, then it would appear that the insurer had a reasonably objective basis for denying benefits and summary judgment should be granted.

[4] "The mere existence of an alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment. The requirement is that there be no genuine triable issue of material fact. A factual issue is a

66

¶ 111. The majority's creativity appears to be motivated by concerns about public policy. It echoes Allstate's expressed public policy concern about allowing a freestanding claim of bad faith to proceed without a threshold finding of breach of contract. It cites *Dahmen* for the proposition that discovery of an insurer's work product would be unlimited:

> [The Dahmens] will be entitled to discovery of the insurer's work product and attorney/client material containing information relevant as to how the claim was handled. This information would include the insurer's internal determination to deny benefits, its evaluation as to how a jury may value the Dahmens' claim and its approach to settlement.

Majority op., ¶ 39 (citing *Dahmen v. American Family Mut. Ins. Co.,* 2001 WI App 198, 247 Wis. 2d 541, 635 N.W.2d 1); *see also id.,* ¶¶ 75, 75 n.7.

¶ 112. The majority's concern is exaggerated for two reasons. First, *Dahmen* does not stand for the proposition that once a bad faith claim is made, an insurer must blindly turn over its entire file. There are well-established procedures for curbing discovery abuses. Wisconsin Stat. § 804.01(3) "confers broad powers on the courts to regulate or prevent discovery, even where the materials sought" may otherwise be discoverable. Grenig, *supra* § 401.3. The majority gives short shrift to the circuit court's broad discretion to issue protective orders on a case-by-case basis.

¶ 113. Second, under the established rules of civil procedure, the insurer's motion for summary judgment

genuine issue of material fact if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Jay E. Grenig, *Wisconsin Practice Series: Civil Procedure* § 208.3 (4th ed. 2010).

67

may be heard once the pleadings are complete. Wis. Stat. § 802.08(1). Accordingly, the insurer need not wait until discovery is finished—or even until after discovery has begun—to argue that it is entitled to summary judgment. "[A] court should not enforce a discovery request if the material sought is relevant to a claim upon which no relief can be granted." Grenig, *supra* § 401.3.

¶ 114. In sum, unlike the majority, I would rely upon established law and procedures to resolve these issues. I conclude that the legal questions raised by the court of appeals and the public policy issues raised by Allstate can be readily addressed through a straightforward application of the well-established summary judgment procedure to the longstanding elements of a bad faith claim.

¶ 115. Here, Allstate has not made a motion for summary judgment at this time, and it has advanced no argument that it had an objectively reasonable basis for denying the benefits. Rather, this is an appeal of an order denying Allstate's motion to bifurcate. Brethorst raised only one claim and there is no issue of insurance coverage, so there is nothing to bifurcate.[5] I agree with

---

[5] In addition to obfuscating the standard and procedure for a bad faith tort claim, the majority also confuses the law relating to bifurcation under Wis. Stat. § 805.05(2). *See* majority op., ¶ 20. We recently explained that the statute permits bifurcation of separate claims, but it does not authorize bifurcation of separate "issues" within a single claim. *Waters v. Pertzborn,* 2001 WI 62, ¶ 31, 243 Wis. 2d 703, 627 N.W.2d 497.

There is only one statutory exception to this otherwise hard-and-fast rule: "An exception to [the rule] is the bifurcation of an issue of insurance coverage under 803.04(2)(b)." *Id.,* ¶ 21. Wisconsin Stat. § 803.04(2)(b) provides: "Nothing herein contained shall be construed as prohibiting the trial court from directing and conducting separate trials on the issue of liabil-

the analysis of the learned circuit court. It properly denied Allstate's motion.

¶ 116. For the reasons stated above, I respectfully concur.

¶ 117. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this concurrence.

ity . . . and on the issue of whether the insurance policy in question affords coverage."

The majority confuses the law by asserting that "the legislative history" of Wis. Stat. § 805.05(2) "clearly demonstrates that the rule barring bifurcation of issues was not intended to apply to cases involving insurance coverage." Majority op., ¶ 20, n.4. What does the majority mean? The majority's attempted explanation misstates our holding in *Waters,* and it misstates the applicable statutes.