**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 30, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No. 2024AP750** | Cir. Ct. No. 2023CV11 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS DISTRICT III** |

RICHARD ANDAZOLA AND DEBRA ANDAZOLA,

   PLAINTIFFS-APPELLANTS,

 V.

TRAVELERS PERSONAL INSURANCE COMPANY,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Pierce County: ELIZABETH L. ROHL, Judge. *Affirmed in part, reversed in part and cause remanded for further proceedings*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Richard and Debra Andazola[1] appeal an order granting summary judgment to their insurer, Travelers Personal Insurance Company, and dismissing the Andazolas' claims for breach of contract, bad faith, and statutory interest.  For the reasons explained below, we conclude that the circuit court properly granted Travelers summary judgment on the Andazolas' breach of contract claim.  We conclude, however, that Travelers was not entitled to summary judgment on the Andazolas' bad faith and statutory interest claims. We therefore affirm the circuit court's order with respect to the breach of contract claim, reverse the order with respect to the bad faith and statutory interest claims, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2      Travelers issued a homeowners policy to the Andazolas that insured their residence in River Falls, Wisconsin, for the policy period from February 1, 2022, to February 1, 2023.  On September 26, 2022, the Andazolas submitted a claim under the policy for hail damage that allegedly occurred during a storm on September 20, 2022.

¶3      On October 2, 2022, Travelers sent an adjuster to inspect the Andazolas' home.  The adjuster prepared an estimate of $29,862.80 for the replacement cost value (RCV) of the loss and $18,183.57 for the actual cash value (ACV) of the loss.  On October 4, 2022, Travelers issued the Andazolas a check for $17,183.57—the ACV determined by its adjuster, minus a $1,000 deductible.

---

[1] We refer to Richard and Debra Andazola, collectively, as "the Andazolas."  Where necessary, we refer to them individually by their first names.

¶4     On November 11, 2022, the Andazolas provided Travelers with a repair estimate prepared by Tim Fischer, the president of Fischer Companies, which was the entity that had originally installed the Andazolas' "unique" flat roof.  Fischer estimated a cost of $106,738 to replace the roof.  After receiving the Fischer estimate, Travelers reopened the Andazolas' claim.  According to Travelers, Fischer performed temporary repairs to the roof in November 2022 but advised that he could not complete the full repairs until "later in the winter" or possibly the spring.

¶5     Travelers reassigned the Andazolas' claim to a second adjuster, who informed the Andazolas by email on November 17, 2022, that "[d]ue to the high volume of claims being received around this time of the year, the average time for reviewal is about 10-14 business days, but I will try my best to get everything completed within a timely fashion."  On November 28, 2022, Travelers informed the Andazolas that because of their hail damage claim, Travelers would not be renewing their policy.

¶6     On December 6, 2022, a third adjuster, Jason Dell, was assigned to the Andazolas' claim.  Dell spoke with Richard on December 6 about Travelers' "disagreement with the scope and amount of [Fischer's] estimate" and about issues regarding the solar panels on the Andazolas' roof.  Dell sent Richard an email later that day confirming their phone conversation and requesting additional information about the solar panels and about the presence of insulation under the roof.

¶7     Also on December 6, 2022, Dell spoke with Fischer and advised him that Fischer's estimate was "above what Travelers considered a reasonable cost of repair for the claimed damage."  According to Travelers, during that conversation,

Fischer "told Mr. Dell that he thought [the Fischer estimate] was high [as] well, and when he first plugged in the numbers, he had to run them a couple extra times." Travelers asserts that Fischer "was not available to go over the estimate at the time of the call, because he was busy in the field and driving," but "[t]he two planned to review the estimate in full detail later." However, Travelers cites no evidence showing that they actually met and reviewed Fischer's estimate.

¶8 On January 5, 2023, the Andazolas' insurance agent emailed Dell, stating, "Something needs to be done with this claim. There is more damage occurring due to the roof leaking." Dell responded:

> We're kind of in a tough spot due to the time of year and snow covering roofs. The insured's contractor came in with an extremely high estimate that we cannot approve and will likely not get close to half of (it's over $100K).
>
> I was under the impression that the roof had been secured (either tarped or tarred) to prevent from further leaking?!
>
> I'll reach out to the homeowner and advise on the next steps.

¶9 On January 11, 2023, Debra emailed Dell, stating:

> This is to inform you that lights are flickering in our home, whenever any appliances are used. This did not occur prior to the roof damage and it greatly concerns us as a safety hazard in our home. Since[] sending the last pictures of the sof[f]it, it has now fallen off the house. The ceiling tiles inside several areas of the home are now sagging and the ceiling continues to drip water.

Debra further stated that the Andazolas had retained counsel.

¶10 On January 12, 2023, Dell emailed a roofing contractor, seeking a "comparative estimate" for the cost to repair the Andazolas' roof. Later that day, Dell responded to Debra's email as follows:

4

> Thank you for the update regarding the conditions at the home. I was under the impression that your contractor had made temporary repairs to prevent from any sort of further leaking.
>
> To note, I had sent an email to your husband in December (attached) and did not receive a response. I was looking for some additional information on the home.
>
> With that said, the contractor's estimate of over $100K for your roof is grossly overstated and we cannot get anywhere near validating their figures and cannot approve their estimate. I'll be honest upfront and let you know we would likely not be able to even get close to validating half that figure—it is nowhere near what we would consider reasonable for the repairs.
>
> I'll look to schedule something in the next couple of days with you to take a look at the current conditions and see what we can do to get this moving forward.

The next day, however, Travelers reassigned the Andazolas' claim to a fourth adjuster. Travelers subsequently reassigned the claim to a fifth adjuster on January 24, 2023. Travelers cites no evidence showing that either of those adjusters took any substantive action regarding the Andazolas' claim.

¶11 The Andazolas filed suit against Travelers on January 26, 2023. First, the Andazolas alleged that Travelers had breached their insurance policy by failing to:

> a. Properly and timely adjust the Claim;
>
> b. Conduct a diligent investigation;
>
> c. Relay accurate information concerning the terms and conditions of the Policy;
>
> d. Issue timely payment of the Claim in an appropriate amount to repair covered hail damage;
>
> e. Assist the Andazolas' efforts to obtain timely payment of the Claim;

5

f. Acknowledge and indemnify the Andazolas for all damage arising out of the loss described above;

g. Acknowledge the Andazolas' contractual rights under the policy, including for payment of covered losses;

h. Any other acts or omissions to be shown at trial on the merits.

¶12 Second, the Andazolas asserted a bad faith claim, alleging that Travelers had breached its implied duty of good faith and fair dealing under the policy by "refusing to pay those amounts at issue in the Claim absent any reasonable proof or basis for the nonpayment," "refusing to investigate whether Fischer Companies' quote is accurate," and failing to "proceed in a manner that is honest and informed."

¶13 Third, the Andazolas asserted that they were entitled to statutory interest under WIS. STAT. § 628.46 (2023-24)[2] because Travelers failed to pay the full amount of their claim within 30 days of receiving written notice of the loss and the amount of the loss.

¶14 On February 17, 2023, Travelers requested an inspection of the Andazolas' property. On the same date, Travelers also requested an appraisal of the Andazolas' claim, pursuant to the policy's appraisal provision. After the Andazolas refused to participate in an appraisal, Travelers moved to compel appraisal and to stay further proceedings in the litigation. The circuit court granted that motion on May 9, 2023. The court subsequently granted Travelers' motion to compel an inspection of the Andazolas' home.

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

6

¶15 An inspection of the property took place on July 24, 2023. Experts in roofing, engineering, and electrical work participated in the inspection. The experts concluded that the damage to the Andazolas' home was not caused by hail but, rather, by water intrusion caused by solar panel brackets installed on the roof. Based on the experts' reports, Travelers concluded that the damage to the residence was not due to hail; however, Travelers confirmed that its policy provided coverage for damage caused by faulty workmanship.

¶16 On October 8, 2023, Travelers issued the Andazolas a check for $39,389.91, based on a repair estimate provided by Simon Construction. According to Travelers, that amount represented the ACV of the loss, minus Travelers' prior payment to the Andazolas.

¶17 The appraisal was subsequently completed on October 10, 2023. The appraisal panel determined an ACV of $21,117.26 and an RCV of $114,067.32 for "the amount of damage sustained to the property arising out of faulty, inadequate, or defective workmanship or construction." The appraisal included the following "clarifications": "No prior payments or deductibles were considered. PWI—1)Structural repairs[;] 2) framing repairs[;] 3) temp repairs[;] 4) engineering costs[;] 5) permits[.]"[3]

¶18 On November 7, 2023, Travelers sent the Andazolas a check for $56,484.84. The accompanying letter from Travelers' attorney explained:

> As you are aware, the appraisal panel has issued its award. The appraisal award totals $21,117.26 ACV and $114,067.32 RCV. Travelers has paid $56,542 to date, so no further payments are owed on the ACV of the appraisal

---

[3] The parties agree that "PWI" stands for "paid when incurred."

award. Travelers intends to move the Court to affirm the appraisal award.

The Travelers policy requires an insured to complete repairs before payment of replacement cost and payment of increased cost of repairs due to enforcement of ordinance or law. However, as an accommodation to your clients, Travelers will issue payment for the RCV of the appraisal award, less prior payments and deductible. Enclosed please find a check for payment in the amount of $56,484.84.

Additionally, we note that the appraisal award includes additional payments for items paid when incurred (please see "clarifications" section on page 1 of the award). Please advise when your clients intend to complete repairs to the property. Once repairs have been completed, please provide documentation demonstrating the amounts incurred. We will provide such documentation to Travelers upon receipt.

¶19 Travelers then filed a motion to confirm the appraisal award and for summary judgment on all of the Andazolas' claims. In response, the Andazolas informed the circuit court that they were not contesting the appraisal award. However, they opposed Travelers' summary judgment motion, arguing that the appraisal award showed that Travelers had breached the policy by failing to perform a neutral and fair investigation of their claim. They also argued that even if their breach of contract claim was no longer viable due to Travelers' payment of the appraisal award, "Travelers' bad faith is still actionable."

¶20 The circuit court issued a written order granting Travelers' motion to confirm the appraisal award and for summary judgment. First, the court confirmed the appraisal award, noting that the Andazolas had not contested it.

¶21 Second, with respect to the breach of contract claim, the circuit court reasoned that while the Andazolas' complaint "lists a number of alleged breaches, … the written argument focuses on the alleged failure of [Travelers] to perform a neutral and fair investigation." The court then concluded, as a matter of

law, that the undisputed facts did not show that Travelers had failed to perform a neutral and fair investigation.

¶22    Third, addressing the Andazolas' bad faith claim, the circuit court noted that a breach of contract is a "fundamental prerequisite" to establishing a bad faith claim and that, because the Andazolas had not established a breach of contract, their bad faith claim "cannot be sustained either." The court further stated that there was "no evidence to support that [Travelers] acted in bad faith."

¶23    Fourth and finally, the circuit court concluded that the Andazolas' statutory interest claim failed because Travelers

> issued initial payment, additional payment following inspection, and payment after the appraisal award within 30 days. No part of Plaintiffs' claim is overdue. Travelers issued its initial payment to Plaintiffs within 30 days of Plaintiffs bringing their claim and Travelers issued subsequent payment within 30 days of the appraisal award setting the amount of the loss.

¶24    The Andazolas now appeal, arguing that the circuit court erred by granting Travelers summary judgment on each of their claims.

## DISCUSSION

¶25    We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

9

¶26    When reviewing a circuit court's summary judgment ruling, we construe the facts and all reasonable inferences in favor of the nonmoving party. ***Strozinsky v. School Dist. of Brown Deer***, 2000 WI 97, ¶32, 237 Wis. 2d 19, 614 N.W.2d 443.   "Should the material presented on the motion be subject to conflicting interpretations or if reasonable people might differ as to its significance, then summary judgment must be denied."  ***Oddsen v. Henry***, 2016 WI App 30, ¶26, 368 Wis. 2d 318, 878 N.W.2d 720.  Any doubts as to whether a genuine issue of material fact exists must be resolved against the moving party. ***CED Props., LLC v. City of Oshkosh***, 2018 WI 24, ¶19, 380 Wis. 2d 399, 909 N.W.2d 136.

## I.  Breach of contract claim

¶27    To prevail on a breach of contract claim, a plaintiff must prove three elements: (1) the existence of a contract between the plaintiff and the defendant; (2) a breach of that contract; and (3) damages.  ***Pagoudis v. Keidl***, 2023 WI 27, ¶12, 406 Wis. 2d 542, 988 N.W.2d 606.  In the context of an insurance policy, a breach is a "failure to pay the claim in accordance with the policy."  ***Brethorst v. Allstate Prop. & Cas. Ins. Co.***, 2011 WI 41, ¶25, 334 Wis. 2d 23, 798 N.W.2d 467 (quoting ***Anderson v. Continental Ins. Co.***, 85 Wis. 2d 675, 686, 271 N.W.2d 368 (1978)).

¶28    Travelers asserts that it was entitled to summary judgment on the Andazolas' breach of contract claim because the undisputed facts show that it "has issued all payments to the Andazolas consistent with the appraisal award."  We agree.  As discussed above, Travelers requested an appraisal in accordance with the policy's appraisal provision.  The Andazolas have not challenged the amount of the appraisal award, and they do not dispute that Travelers has paid the full

amount of the award. Thus, at this point, it is undisputed that Travelers has paid the Andazolas' claim in accordance with the policy. Accordingly, any breach of the policy that may have occurred when Travelers previously failed to pay the full amount due under the policy has now been cured. Stated differently, the Andazolas can no longer show that they have sustained any damages as a result of Traveler's breach. Consequently, any claim that Travelers breached the policy by failing to pay the full amount due on the Andazolas' claim is no longer viable, and the circuit court properly granted Travelers summary judgment on the breach of contract claim.[4]

¶29    The Andazolas nevertheless assert that Travelers also breached the policy by failing to conduct a "neutral, detached investigation" of their claim. However, the Andazolas do not cite any provision of the policy requiring Travelers to conduct a neutral and detached investigation. Instead, the Andazolas assert that Travelers was required to do so pursuant to its implied duty of good faith and fair dealing.

¶30    In support of this argument, the Andazolas cite various cases that analyzed the adequacy of insurers' investigations in the context of bad faith claims. *See, e.g.*, ***Anderson***, 85 Wis. 2d 675; ***Danner v. Auto-Owners Ins.***, 2001 WI 90, 245 Wis. 2d 49, 629 N.W.2d 159; ***Brethorst***, 334 Wis. 2d 23; ***Davis v. Allstate Ins. Co.***, 101 Wis. 2d 1, 303 N.W.2d 596 (1981); ***Benke v.***

---

[4] The Andazolas briefly argue that their breach of contract claim has not been fully resolved because "the appraisal award did not include certain repairs because the extent of the damage will not be known until other repairs are started." We agree with Travelers, however, that the fact that Travelers may be required to make additional payments in the future provides no basis to conclude that Travelers has, at this point, breached the parties' contract by failing to make those payments, particularly where the Andazolas concede that the amount of any future payments is currently unknown.

11

*Mukwonago-Vernon Mut. Ins. Co.*, 110 Wis. 2d 356, 329 N.W.2d 243 (Ct. App. 1982). Bad faith and breach of contract, however, are "separate and distinct" claims. *Brethorst*, 334 Wis. 2d 23, ¶25.

¶31 As noted above, in the insurance policy context, a breach of contract is a "failure to pay the claim in accordance with the policy." *Id.* (quoting *Anderson*, 85 Wis. 2d at 686). Bad faith, in turn, "is a separate intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract." *Anderson*, 85 Wis. 2d at 687. Specifically, a bad faith claim arises from an insurer's breach of the implied duty of good faith and fair dealing. *See Danner*, 245 Wis. 2d 49, ¶¶45-54. "[E]very insurance contract from its inception has an implied covenant of good faith and fair dealing between the insured and the insurer," and "[w]hen this duty of good faith and fair dealing is breached, and the insured incurs damages as a result of that breach, a claim for bad faith will lie." *Id.*, ¶54. "Breach of this special duty is a tort and is unrelated to contract damages." *Id.*, ¶49.

¶32 Thus, a breach of contract claim arises from an insurer's breach of a specific policy provision—namely, the insurer's failure to pay amounts due under the policy—but a bad faith claim requires *additional* bad conduct by the insurer in handling the claim—i.e., a breach of the insurer's duty of good faith and fair dealing. The Andazolas cite no legal authority—and this court has located none—in support of the proposition that an insurer's breach of the duty of good faith and fair dealing by failing to conduct an adequate investigation, in and of itself, can be the basis for a breach of contract claim against the insurer, as opposed to a bad faith claim. "Arguments unsupported by references to legal authority will not be considered." *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

12

¶33     For these reasons, we conclude that the circuit court properly granted Travelers summary judgment on the Andazolas' breach of contract claim. Accordingly, we affirm that portion of the circuit court's order.

## II.  Bad faith claim

¶34     The Andazolas also argue that the circuit court erred by granting Travelers summary judgment on their bad faith claim.  As a general matter, "[b]ad faith is a determination to be made by the trier of fact." *Mowry v. Badger State Mut. Cas. Co.*, 129 Wis. 2d 496, 517, 385 N.W.2d 171 (1986).  However, the issue of bad faith "is to be decided by the court as a matter of law, rather than by the fact finder as a question of fact," "when the facts are undisputed and the evidence permits only one reasonable inference or conclusion." *Id.* at 518.

¶35     As Travelers correctly notes, "some breach of contract by an insurer is a fundamental prerequisite for a first-party bad faith claim against the insurer by the insured." *See Brethorst*, 334 Wis. 2d 23, ¶65.  As explained above, we have determined that the Andazolas' breach of contract claim is no longer viable, due to the lack of present contractual damages, and that the circuit court properly granted Travelers summary judgment on that claim.  Travelers therefore asserts that "[b]ecause the Andazolas cannot show a breach of contract, their bad-faith claim similarly fails."

¶36     Under the specific circumstances of this case, we disagree.  The fact that the Andazolas cannot show a *presently existing* breach of contact does not prevent them from prevailing on their bad faith claim.  As the Andazolas note, in *Anderson*, the case that recognized the tort of bad faith in Wisconsin, our supreme court stated:

> The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, [i.e.], would a reasonable insurer under the circumstances have denied *or delayed payment of* the claim under the facts and circumstances.

*Anderson*, 85 Wis. 2d at 692 (emphasis added). That an insurer's *delayed payment* of a claim can give rise to a bad faith claim suggests that a bad faith claim can exist where an insurer initially breached the parties' contract by failing to pay a claim but later remedied that breach by paying the full amount of the claim. Stated differently, we agree with the Andazolas that the quoted statement from *Anderson* "indicates that an outstanding breach of contract is not necessary for [bad faith] litigation; a breach is still actionable as part of a claim for bad faith even if the breach is later remedied."

¶37 This conclusion is consistent with our supreme court's decision in *Danner*. There, Darci Danner was involved in a car accident with a vehicle driven by Tod Kraus. *Danner*, 245 Wis. 2d 49, ¶6. Danner was insured by Auto-Owners Insurance, and her policy provided $300,000 in underinsured motorist (UIM) coverage. *Id.*, ¶8. In May 1994, Kraus's insurer paid Danner $25,000, Kraus's policy limit. *Id.*, ¶26. Danner invoked her policy's arbitration provision, and in July 1995, an arbitration panel awarded Danner over $220,000 in damages, which Auto-Owners subsequently paid. *Id.*, ¶¶22, 36. Danner then sued Auto-Owners for bad faith in connection with its handling of her UIM claim. *Id.*, ¶37. A jury ultimately found that Auto-Owners had acted in bad faith. *Id.*, ¶38.

¶38 On appeal, our supreme court affirmed the judgment against Auto-Owners. *Id.*, ¶40. As relevant here, the court concluded that a UIM carrier has a duty to act in good faith and fair dealing with respect to its insured at all times, including "during the investigation, evaluation and processing of an

14

underinsured motorist claim." *Id.*, ¶57. The court rejected Auto-Owners' argument that it had no duty to act in good faith until the arbitration award was made because it had no legal obligation to pay Danner prior to that time. *Id.*, ¶54.

¶39 Thus, in *Danner*, our supreme court affirmed a judgment finding that an insurer had acted in bad faith in its handling of a claim, even though the insurer had paid the full amount due to the insured before the bad faith claim was filed. *Danner* therefore confirms that even if an insurer cures a breach of contract by belatedly paying its insured the full amount due on a claim, the insured can still sue for bad faith based on the insurer's actions in handling the claim. Accordingly, we reject Travelers' argument that the Andazolas cannot prevail on their bad faith claim simply because their breach of contract claim is no longer viable.

¶40 We further conclude that the circuit court erred by granting Travelers summary judgment on the Andazolas' bad faith claim because the undisputed facts give rise to multiple reasonable inferences, one of which is that Travelers acted in bad faith during its handling of the Andazolas' claim. "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Anderson*, 85 Wis. 2d at 691. "The first prong of this test is objective, while the second prong is subjective." *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 377, 541 N.W.2d 753 (1995). "Under the first prong, the insured must establish that, under the facts and circumstances, a reasonable insurer could not have denied or delayed payment of the claim." *Id.* at 378. The second, subjective prong "can be inferred from 'a reckless disregard of a lack of a reasonable basis for denial or a reckless

indifference to facts or to proofs submitted by the insured.'" **Id.** at 392 (quoting **Anderson**, 85 Wis. 2d at 693).

¶41    In other words, an insurer "may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." **Anderson**, 85 Wis. 2d at 693.   Whether a claim is fairly debatable "implicates the question whether the facts necessary to evaluate the claim are properly investigated and developed or recklessly ignored and disregarded." **Id.** at 691.

¶42    Here, construing all reasonable inferences from the undisputed facts in favor of the Andazolas, *see* **Strozinsky**, 237 Wis. 2d 19, ¶32, a reasonable jury could find that the Andazolas have satisfied both the objective and subjective prongs of the **Anderson** test.   First, a reasonable jury could find that Travelers lacked a "reasonable basis" for delaying its payment of the full amount of the Andazolas' claim.  *See* **Anderson**, 85 Wis. 2d at 691.

¶43    The undisputed facts show that Travelers' initial investigation of the Andazolas' claim resulted in Travelers calculating an RCV of $29,862.80 and an ACV of $18,183.57.   As a result, Travelers issued the Andazolas a check for $17,183.57—the ACV determined by its adjuster, minus a $1,000 deductible—and closed the Andazolas' claim.  However, that amount was significantly less than the amount ultimately awarded by the appraisal panel.   Furthermore, Travelers initially determined that the loss was due to hail damage, but it later changed course and concluded that the loss was caused by the faulty installation of the Andazolas' solar panels.  These factors could support a reasonable inference that Travelers' initial investigation of the Andazolas' claim was rushed and inadequate.

¶44    On November 11, 2022, approximately one month after receiving Travelers' initial payment, the Andazolas provided Travelers with Fischer's estimate that it would cost $106,738 to replace their roof.  Travelers then reopened the Andazolas' claim and assigned it to a new adjuster.  Six days after Travelers received the Fischer estimate, that adjuster informed the Andazolas that, due to the high volume of claims, the estimate would not be reviewed for 10 to 14 business days.  A third adjuster—Dell—was then assigned to the claim, but the Andazolas did not receive a response from Dell regarding the Fischer estimate until December 6, 2022, which was 25 days after Travelers received the Fischer estimate.

¶45    As the Andazolas note, the Wisconsin Administrative Code lists as examples of unfair claim settlement practices the "[f]ailure to promptly acknowledge pertinent communications with respect to claims arising under insurance policies," the "[f]ailure to initiate and conclude a claims investigation with all reasonable dispatch," and the "[f]ailure to make provision for adequate claims handling personnel, systems and procedures to effectively service claims in this state incurred under insurance coverage issued or delivered in this state." WIS. ADMIN. CODE § Ins 6.11(3)(a)1.-2., (b)2. (Dec. 2024).[5]  The Administrative Code further defines the terms "prompt" and "promptly" as requiring "responsive action within 10 consecutive days from receipt of a communication concerning a claim."  WIS. ADMIN. CODE § Ins 6.11(4).  Here, the undisputed facts show that Travelers did not provide a substantive response regarding the Fischer estimate within 10 days of its receipt.

---

[5] All references to WIS. ADMIN. CODE ch. Ins 6 are to the December 2024 register.

¶46     The record further shows that when Dell ultimately spoke with Richard on December 6, 2022, he expressed "disagreement with the scope and amount of [Fischer's] estimate" and raised questions regarding the Andazolas' solar panels. The record also shows that Dell spoke with Fischer on December 6, 2022, and advised him that Fischer's estimate was "above what Travelers considered a reasonable cost of repair for the claimed damage." There is nothing in the record, however, to indicate any basis for Dell's disagreement with the Fischer estimate at that time, beyond a general belief that the estimate was too high. Additionally, while Dell and Fischer planned to review the estimate in greater detail at a later time, Travelers cites no evidence indicating that such a review ever occurred.[6]

¶47     Dell apparently took no further action on the Andazolas' claim until January 5, 2023, when he received an email from the Andazolas' insurance agent stating, "Something needs to be done with this claim. There is more damage occurring due to the roof leaking." At that point, Dell responded to the agent stating, in part, that "[t]he insured's contractor came in with an extremely high estimate that we cannot approve and will likely not get close to half of (it's over $100K)." Again, Dell provided no basis for these opinions. Furthermore, while Dell told the adjuster, "I'll reach out to the homeowner and advise on the next steps," Travelers cites no evidence to suggest that he did so.

---

[6] Travelers emphasizes that during the December 6, 2022 phone conversation with Dell, Fischer stated "that he thought [the estimate] was high [as] well, and when he first plugged in the numbers, he had to run them a couple extra times." Travelers suggests this statement shows that Fischer himself believed that his own estimate was too high. An alternative interpretation, however, is that when Fischer initially calculated the estimate, the amount was higher than he anticipated, but after running the numbers "a couple extra times" and arriving at the same amount, Fischer believed that his estimate was correct.

¶48 Instead, the record shows that on January 11, 2023, Debra emailed Dell, informing him of additional damage to the home, which she alleged was due to the leaking roof. Debra also told Dell that the Andazolas had retained counsel.

¶49 Only at that point—two months after the Andazolas had provided Travelers with the Fischer estimate—did Dell email a roofing contractor seeking a "comparative estimate" for the cost to repair the Andazolas' roof. On the same day—and, notably, before receiving any comparative estimate—Dell emailed Debra stating that Fischer's estimate "of over $100K for your roof is grossly overstated," that Travelers "cannot get anywhere near validating their figures and cannot approve their estimate," and that Travelers "would likely not be able to even get close to validating half that figure." Once again, Dell cited no evidence in support of his assessments. Additionally, while Dell stated that he would "look to schedule something in the next couple of days" to "see what we can do to get this moving forward," Travelers reassigned the Andazolas' claim to a different adjuster the next day and then to a fifth adjuster on January 24, 2023. Travelers cites no evidence showing that either of those adjusters took any meaningful action regarding the claim before the Andazolas filed suit on January 26, 2023.

¶50 Moreover, it was only after the Andazolas filed suit that Travelers invoked the policy's inspection and appraisal provisions. A jury could reasonably infer that, if Travelers truly believed that the Fischer estimate was too high and had a valid basis for that belief, it would have invoked those provisions sooner in order to obtain more information regarding the amount of the loss. As the Andazolas aptly argue, "The fact that [the Andazolas] were compelled to engage in litigation and later received sums much larger than Travelers initially tried to settle for demonstrates"—or at least supports a reasonable inference—"that Travelers' position was not objectively reasonable."

19

¶51     Travelers asserts that it had a reasonable basis for delaying payment of the Andazolas' claim because it was actively investigating the claim during the four-month period between the time it received notice of the claim and the date the Andazolas filed suit.  That is one reasonable inference that a jury could draw from the evidence presented.  For the reasons outlined above, however, a jury could also reasonably infer that Travelers lacked any rational basis for its belief that the Fischer estimate was "extremely high" and, accordingly, that Travelers unreasonably delayed in investigating and ultimately paying the full amount of the Andazolas' claim, particularly after the Andazolas informed Travelers about ongoing damage to their residence caused by their leaking roof.  On summary judgment, we must construe the facts and all reasonable inferences in favor of the nonmoving party—i.e., the Andazolas.[7]  *See Strozinsky*, 237 Wis. 2d 19, ¶32.

¶52     Turning to the subjective prong of the bad faith analysis, a reasonable jury could find that Travelers was aware of, or recklessly disregarded, the lack of a reasonable basis for delaying payment of the Andazolas' claim.  *See Anderson*, 85 Wis. 2d at 691.  Specifically, a jury could infer such reckless disregard based on Travelers' repeated delays in processing the Andazolas' claim; Travelers' continued insistence—absent any substantiation—that the Fischer estimate was too high; and Travelers' failure to take meaningful action to

---

[7] Travelers also suggests that the Andazolas obstructed Travelers' efforts to obtain the information necessary to evaluate their claim.  Again, that is one reasonable inference that a jury could draw from the evidence presented.  However, it is not the only reasonable inference.  *See Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶32, 237 Wis. 2d 19, 614 N.W.2d 443.  Specifically, we agree with the Andazolas that a jury could reasonably infer that the information the Andazolas failed to provide was not "necessary" for Travelers "to conduct an inspection, seek a contractor or engineer for a review of the Fischer estimate, or otherwise review the Fischer estimate to determine whether there were amounts [Travelers] had not paid that it [might] still owe."

investigate the amount of the loss until after the Andazolas filed suit, despite the Andazolas informing Travelers of additional damage to their home that they claimed was caused by the leaking roof.

¶53 For these reasons, we conclude that the circuit court erred by granting Travelers summary judgment on the Andazolas' bad faith claim. We therefore reverse that portion of the court's order and remand for further proceedings on the bad faith claim.

## III. Statutory interest claim

¶54 Finally, the Andazolas argue that the circuit court erred by granting Travelers summary judgment on their claim for statutory interest under WIS. STAT. § 628.46. "Unless otherwise provided by law, an insurer shall promptly pay every insurance claim." Sec. 628.46(1). "A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss." *Id.* "All overdue payments shall bear simple interest at the rate of 7.5 percent per year." *Id.* However, "[a]ny payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer." *Id.*

¶55 The Andazolas argue that Travelers owes statutory interest because "Travelers was obligated to pay any amounts supported by written notice (the Fischer estimate) for which it did not have reasonable proof to establish its non-liability." The Andazolas further assert that "[t]he only proof presented by Travelers in opposition to the Fischer estimate was [Travelers'] own rushed estimate and its belief that Fischer was too high, but it could not withhold undisputed amounts from [the Andazolas]." Stated differently, the Andazolas

argue that "[o]nce Travelers had the Fischer estimate in its possession, it had 30 days to pay amounts for which it lacked a reasonable proof of its non-responsibility. Travelers had no such proof."

¶56 In response, Travelers asserts that it had "a reasonable basis to dispute the Fischer estimate" because the Fischer estimate "was substantially higher than Traveler[s'] initial estimate" and because Travelers "sought further information to allow it to assess the claimed additional damage." Travelers also notes that the appraisal award "ultimately valued the damage to the roof at a lower amount than the Fischer estimate." According to Travelers, these circumstances show that it had "reasonable proof" of nonresponsibility for purposes of WIS. STAT. § 628.46(1).[8]

¶57 We conclude that given the facts presented, a reasonable jury could draw competing inferences as to whether Travelers had reasonable proof that it was not responsible for the amount set forth in the Fischer estimate. *See Dilger v.*

---

[8] The three-paragraph discussion of the Andazolas' statutory interest claim in Travelers' appellate brief is limited to an argument that Travelers had "reasonable proof" of nonresponsibility. Travelers does not develop any other argument in support of its claim that the circuit court properly granted it summary judgment on the statutory interest claim. In particular, Travelers does not argue that the Fischer estimate failed to establish that the Andazolas' damages were "in a sum certain amount." *See Kontowicz v. American Standard Ins. Co. of Wis.*, 2006 WI 48, ¶2, 290 Wis. 2d 302, 714 N.W.2d 105, *clarified on denial of reconsideration*, 2006 WI 90, 293 Wis. 2d 262, 718 N.W.2d 111 (holding that a third-party claimant may recover statutory interest under WIS. STAT. § 628.46 only when three requirements are met, including that "the amount of damages must be in a sum certain amount"); *see also Haynes v. American Fam. Mut. Ins. Co.*, 2014 WI App 128, ¶21, 359 Wis. 2d 87, 857 N.W.2d 478 (applying the "sum certain" requirement from *Kontowicz* to a claim for statutory interest by a first-party claimant); *but see Casper v. American Int'l S. Ins. Co.*, 2017 WI App 36, ¶18, 376 Wis. 2d 381, 897 N.W.2d 429 (stating that the *Kontowicz* requirements "raise the bar" for third-party claimants, whereas first-party claimants need only provide written notice of the fact of a covered loss and of the amount). We will not abandon our neutrality to develop arguments on Travelers' behalf. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

*Metropolitan Prop. & Cas. Ins. Co.*, 2015 WI App 54, ¶12, 364 Wis. 2d 410, 868 N.W.2d 177 ("Whether an insurer has reasonable proof of nonresponsibility for purposes of WIS. STAT. § 628.46 interest is a question of fact."). On one hand, a reasonable jury could infer that Travelers' initial investigation of the claim was adequate and provided a basis for Travelers to dispute the Fischer estimate, which was significantly higher than Travelers' own estimate. Conversely, however, a reasonable jury could infer that Travelers' initial investigation was rushed and inadequate; that, upon receipt of the Fischer estimate, Travelers had no other evidence to dispute the amount claimed; and that, after receiving the Fischer estimate, Travelers failed to take meaningful steps within the 30-day time period set forth in the statute to gather evidence that would call the Fischer estimate into question.

¶58 Accordingly, we conclude that the circuit court erred by granting Travelers summary judgment on the Andazolas' statutory interest claim. We therefore reverse that portion of the court's order and remand for further proceedings on the statutory interest claim.

¶59 No costs are awarded to either party.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.